## THE CITY OF GREENVILLE.[1]

### THE LAURA LEE.[1]

### ST. LOUIS & VICKSBURG ANCHOR LINE v. RED RIVER & COAST LINE.[1]

### BOSTON MARINE INS. CO. v. RED RIVER & COAST LINE.[1]

*(District Court, E. D. Louisiana. November, 1884.)*

ADMIRALTY—COLLISION.
  Where two steamers are each in fault in that neither complied with that rule of navigation which required steamers approaching each other not to come nearer to each other than 800 yards without an exchange of understood and harmonious signals, the damages resulting from their colliding with each other will be divided between them.

In Admiralty.
*Given Campbell, James McConnell,* and *O. B. Sansum,* for libelants.
*W. S. Benedict, John H. Kennard, W. W. Howe, S. S. Prentiss,* and *Richard De Gray,* for claimants.

BILLINGS, J. These causes have been consolidated as depending for their solution upon the same facts. In the first there is a cross-libel;

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

in the second there is a prayer that the owners of the other colliding boat be made party and decreed to pay the whole or a portion of the loss of the insured. The litigation thus combined consists of a suit brought by the owners of the steam-boat City of Greenville against the steam-boat Laura Lee, and a suit brought by the owners of the cargo of the Greenville, growing out of a collision between the two steamers, wherein the Greenville was sunk with her cargo, and, with the cross-libel, present the question upon which boat rests the liability for the damage suffered by the owners of the two boats in consequence of their collision, as well as that resulting from the loss of the cargo. The collision and the sinking took place in the early morning of the twelfth of January, A. D. 1883, at some time before light, approximating to half-past 3 o'clock, on the Mississippi river, at a point about 80 miles above the city of New Orleans, just above White Castle light, and a short distance above the town of Bayou Goula. The City of Greenville was ascending and the Laura Lee was descending the river, (each on her regular voyage.) The whole subject has been presented by voluminous testimony, and has been argued by the proctors on both sides with great thoroughness in regard to the facts, and with equal research as to the law. The full study which vacation has enabled me to give the cause, has brought me to the conclusion that each of the colliding vessels is in fault upon the facts which her own pleadings admit, or her proofs establish, in that neither complied with that rule of navigation which required steamers approaching each other not to come nearer to each other than 800 yards without an exchange of understood and harmonious signals.

The rules 1 and 2 of the "Rules and Regulations for the Government of Pilots of Steamers navigating the rivers flowing into the gulf of Mexico and their tributaries, adopted by the board of supervising inspectors," and approved by the secretary of the treasury, with the amendments, March 15, 1880, are as follows:

"Rule 1. When steamers are approaching each other the signal for passing shall be one sound of the steam-whistle to keep to the right, and two sounds of the steam-whistle to keep to the left. These signals shall be made first by the descending steamer.

"Rule 2. Should steamers be likely to pass near each other, and these signals should not be made and answered by the time such boats shall have arrived at the distance of eight hundred yards from each other, the engines of both boats shall be stopped; or should the signal be given and not properly understood from any cause whatever, both boats shall be backed until their headway shall be fully checked, and the engines shall not be again started ahead until the proper signals are made, answered, and understood. Doubts or fears of misunderstanding whistles shall be expressed by several short sounds of the whistle in quick succession."

The meaning of rule 2 is manifest. It prescribes that the distance of 800 yards shall be inviolably preserved from encroachment by either steamer until the proper signals have been "made, answered, and understood." Each steamer, upon knowingly coming up to the

point of 800 yards from another approaching steamer, must not only stop all forward revolutions of its engines, but the revolutions must be reversed till all forward motion of the vessel is overcome, and each steamer must remain thus unmoved by any forward impulse of its machinery till there is a full communication from that boat whose duty it is to give the signal, and a reponse which shows a comprehension of and assent to the signal on the part of the other boat. Then, and not till then, may either of the approaching boats move forward towards the other. The importance of this rule in enabling vessels to avoid disaster cannot be overestimated by the navigators, nor can it be too strongly adhered to by courts. It is a mandate which, if obeyed, may be effective in the prevention of calamity, even after negligence of observation, or unskillfulness in sailing, or misconception of locality or of the movements of others, have created or failed to remove impending danger. It requires little delay and no sacrifice upon a voyage, and calls for no effort except ordinary observation; nothing except cessation of all movement. It is the last and, if followed, unfailing adjunct of skill, and is a cure even for incompetency in navigation so far as collision of approaching steamers is concerned. The decisive questions to enable us to determine whether this rule has been observed by a boat in a given cause are: Did she come within 800 yards of the approaching boat? did she know of this approach? and was there an exchange of understood signals? Each party has, by its proofs, shown that its boat consciously disregarded this imperative, I had almost said supreme, rule of navigation.

The showing of the City of Greenville is that she saw the Lee at a distance of some two miles, and still suffered herself to come within 500 or 600 yards of her without any whistle being blown or heard by her. The fact that it was the duty or right of the descending boat to select her direction and give the first signal does not change the obligation of the other boat. The ascending boat must still stop till the signals have been interchanged. The showing of the Laura Lee is that she saw the lights of the steamer which proved to be the Greenville when 500 or 600 yards distant, and yet did not pause, but undertook, when thus within the allowed proximity and while still progressing, to have an exchange of signals. Her reason for thus proceeding is as untenable as that of the other boat for her conduct. That reason is that she mistook the Greenville for a packet which desired to make landings on the west side of the river. The frequent liability to just such misapprehension shows the wisdom of the rule and the necessity of its rigid enforcement. The object of the rule is that each boat may learn the intention of the other, not from its own conjectures or inferences, but from the other's signals, and that collision may be avoided by substituting for hastily-formed opinion easily-obtained and positive information.

If we lay out of view every disputed fact, and confine the several parties to their own testimony, it appears that each of the colliding

vessels knew of the approach of the other, knew that the separating distance was less than the allowed 800 yards, knew that there had been no exchange of understood signals, and therefore knew that there had been no common understanding as to the paths or courses of the respective vessels. Each vessel, notwithstanding this knowledge, and in direct disobedience to a rule of navigation made familiar by constant application, and sacredly obligatory as essential to the safety of life and property upon a river teeming with coming and going boats, continued on its course. Both boats were tending towards the same point, and collision was the inevitable consequence. If the Greenville had completely stopped at any point between the distance of two miles, where she admits she perceived the Lee, and the 800 yards, or if the Lee had stopped, even at the distance of five or six hundred yards, when she admits she fully perceived the Greenville, the collision could not have taken place. The antecedent faults of either vessel, even if they had existed exactly as claimed by the other, would not have resulted in the disaster but for the common violation of this well-known and fundamental rule of navigation. Both vessels must, therefore, be adjudged to have been guilty of fault. It follows that the damage which both vessels suffered, and that resulting from the loss of the cargo of the Greenville, upon which insurance has been paid, as well as from that which was uninsured, should be divided. Let it be referred to a commissioner to report upon the aggregate loss to the two boats and to the insurance company, who are libelants in the second suit. Upon the coming in of this report the question as to the extent of liability of the owners of each boat beyond her value will be determined, if it is presented by the values found by the commissioner and adopted by the court.